UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:21cr076(MPS) |
| v. | : | |
| JOVON GAMBLE | : | July 27, 2021 |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The Government respectfully submits this memorandum in aid of sentencing.  The defendant, Jovon Gamble, is scheduled to be sentenced on August 24, 2021.  For the reasons described below, a sentence within the Guidelines range, 6 to 12 months' imprisonment, appropriately reflects the thefts that occurred over the span of six years and resulted in a loss of $88,150.78 to the United States government.[1]

    I.       BACKGROUND

A.    Procedural History

On May 10, 2021, Gamble waived indictment and pled guilty to a one-count Information charging Theft of Public Money.  Dkt. 1, 2, 4, 5, and 6.  The defendant was released pending sentencing on the same day.  Dkt. 12.  Also on May 10, 2021, the parties entered into a plea agreement.  Dkt. 6.  In the plea agreement, the parties agreed that the defendant's base offense level was 6.  See Plea Agreement at 4.  The parties also agreed that six levels should be added because the total amount of loss was between $40,000 and $95,000.  The parties further agreed that two points should be subtracted for acceptance of

---

[1] The Government acknowledges that this Sentencing Memorandum was due on July 26, 2021, however it is being filed on July 27, 2021.  The untimeliness is due to oversight, and the Government respectfully seeks leave of the Court to file it outside of the order.

responsibility, resulting in a total offense level of 10.  United States Probation agrees with this calculation.  PSR ¶ 3.

In the plea agreement, the parties also agreed that the defendant was a criminal history category I.  *See*, Plea Agreement at 4.  Both parties agreed that a total offense level of 10 and a criminal history category I, results in a Guidelines range of 6 to 12 months.  *Id*. United States Probation agrees with this calculation.  PSR ¶ 77.  In addition, the defendant faces a term of supervised release of 1 to 3 years, a fine of $4,000 to $40,000 and a special assessment of $100.  PSR ¶¶ 80, 85 and 86.  The defendant also agreed to pay restitution in the amount of $88,150.78.  See, Plea Agreement at 2 and PSR ¶ 88.

B.     The Offense Conduct

Beginning in November 2005, Barbara Davis, ("Davis") lawfully received Social Security Administration ("SSA") benefits in the form of monthly deposits made to her Wells Fargo checking account ending in 1132.  Davis was the sole account owner for that checking account.  The defendant, Jovon Gamble, is Davis's son. Davis died on June 30, 2007.  SSA was never informed of Davis' death and continued to make deposits into her checking account until 2017.  Between 2007 and 2017, knowing that Davis had died and was no longer entitled to receive SSA benefits, Gamble accessed Davis's Wells Fargo check account and wrote himself checks from the SSA funds that had been mistakenly deposited into the account.

Gamble knowingly and willfully, with the intent to deprive the government of the use and benefit of its property, stole money that belonged to the United States Government in an amount exceeding $1,000.  Specifically, from 2011 until 2017, Gamble regularly

accessed Davis' Wells Fargo Bank checking account, writing numerous checks to himself and others.  Gamble used the funds to make payments for his rent, parking, water bill, sewer bill and taxes.  Gamble also wrote checks made out to "cash" and to himself. A total of $88,990.00 was mistakenly deposited by SSA into Davis's account.  SSA was able to recover $839.22 from Wells Fargo.  Therefore, the total loss to SSA is $88,150.78.

> D.      United States Sentencing Guidelines

The Government, the defendant and United States Probation agree that the applicable Guidelines range is 6 to 12 months of imprisonment. *See* PSR at ¶¶ 3, 77.

> II.      DISCUSSION

The Government respectfully requests that the Court sentence Mr. Gamble to a sentence within the Guidelines range that the parties agreed to in the plea agreement, 6 to 12 months of imprisonment.  *See* Plea Agreement at 4.  A sentence within this range will be sufficient but not greater than necessary to comply with the 18 U.S.C. § 3553(a) factors.

Section 3553(a) provides that the sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth seven specific considerations:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;
(2)             the need for the sentence imposed—
    (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B)     to afford adequate deterrence to criminal conduct;
    (C)     to protect the public from further crimes of the defendant; and
    (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3)     the kinds of sentences available;
(4)     the kinds of sentence and the sentencing range established [in the Sentencing Guidelines];

3

(5)     any pertinent policy statement [issued by the Sentencing Commission];

(6)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).  The Government highlights what it views as the most significant of the § 3553(a) factors below.

A.    <u>The §3553 Factors</u>

i.    Seriousness of the Offense

The facts and circumstances surrounding this offense are serious.  The seriousness lies not only in the total amount of money that Gamble stole from the Government, but also in the duration and regularity of the thefts.  The criminal conduct occurred over the course of six years, from 2011 to 2017.  During that time, Gamble stole money from the United States government on a monthly basis.  Each time he wrote himself a check, or drew from the account, he was committing the crime of Theft of Government Funds.  Over the course of six years, the defendant made the conscious and deliberate decision to steal from the Government hundreds of times.  The total amount of Government funds stolen by Vargas is $88,150.78.

ii.    History and Characteristics of the Defendant

a. Solid Childhood

By all accounts, Gamble had a comfortable childhood.  His mother provided a safe and caring home for him.  By his own account, his mother was able to provide for him all the "trappings of middle-class American" life.  See Def.'s Mem. At 2.  After success in high school, the defendant attended Morehouse College in Atlanta, Georgia.  Throughout his time

4

at Morehouse, his mother provided financial support including giving him access to a joint bank account that she shared with him.  Gamble later left college when he found himself struggling academically.

In 2007, Gamble's mother passed away.  Gamble inherited over $100,000 from a life insurance policy.  Instead of using this money productively, Gamble decided to take it to a casino.  PSR at ¶ 56.  During this period of his life, Gamble went to Foxwoods Casino every other day—including an episode where he spent 72 continuous hours in the Foxwoods poker room.  He gambled in this way from 2007 to 2014.  *Id.*

Gamble now claims the support that his mother provided him made him "sheltered, isolated and spoiled."  PSR at ¶ 45.  He states that his mother "enable[d]" him, and that he never experienced any real-world consequences for his own financial irresponsibility.  *Id.* He also told U.S. Probation that he never felt the need to budget his income, and he never learned how to do so.  *Id*.

The gambling behavior that the defendant describes is excessive.  Even assuming that he was sheltered to the point that he did not need to learn to budget his finances during and after college, it strains credulity to blame his decision to take his $100,000 inheritance to a casino on his comfortable upbringing.  Indeed, it was his decision—made over and over again—to return to Foxwoods every other day and lose between $1,500 and $3,000 each time.  PSR at ¶ 56.  As such, he found himself in a financial hole of his own making.  It is for this reason that he stole from the Government.

    iii.     Protect the Public and Specific Deterrence

    a. Criminal History

Gamble's lack of criminal history is overstated. Although Gamble has no prior convictions, by his own admission he stole from the Government for 6 years before being confronted by investigators. In other words, he had been committing the crime of Theft of Public Funds for six years before his arrest. This significant period of continuous criminal activity is not captured in the defendant's rap sheet.

Second, the defendant argues his lack of criminal history indicates that he is "highly" unlikely to reoffend, the defendant's argument is unpersuasive. The defendant argues that "Mr. Gamble is highly unlikely to recidivate." Def. Mem. At 5. The defendant, however, goes on to point out that he has a 25.7% likelihood of recidivism.[2] The Government takes issue with characterizing one in four odds as "highly unlikely." The truth is the defendant has, statistically, a one in four chance of recidivating. As such, the chances that the defendant reoffends are not de minimis. Therefore, to protect the public and provide specific deterrence for the defendant, the Government respectfully requests the Court sentence Mr. Gamble to a sentence within the Guidelines range.

iv.    Unwarranted Sentencing Disparity is Not a Concern Here

The defendant cites to the statistic that 26.2% of white collar cases resulted in within-Guidelines sentences in order to suggest that a prison sentence would be a sentencing disparity. This argument, however, is misplaced. According to Table 6 of the same 2019 Federal Sentencing Statistics that the defendant referred to, 53.1% of defendants charged

---

[2] See: The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders. United States Sentencing Commission. Available here: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170309_Recidivism-CH.pdf#page=12.

with Fraud, Theft or Embezzlement crimes who were eligible for non-prison sentences, received prison sentences.[3]  In other words, there is a 53.1% likelihood that a defendant in Gamble's position would receive a prison sentence.  Therefore, it cannot be said that a prison sentence would be an unwarranted sentencing disparity.  As such, the Government respectfully submits that a sentence within the Guidelines range would adequately reflect the types of sentences similarly situated defendants in this Circuit receive.

     v.     General Deterrence

The Court must also fashion a sentence that deters others from committing the crime of Theft of Government Funds.  Because these types of crimes often can occur for many years before the perpetrators are discovered, the public needs to hear that the passing of time will not minimize the sentence received.  Indeed, the length of the criminal conduct should weigh in favor of a longer sentence.  The Government respectfully submits that a sentence within the Guidelines range would adequately deter others from committing this crime.

---

[3] See, Statistical Information Packet, Fiscal Year 2019, Second Circuit.  United States Sentencing Commission.  Available here:
https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2019/2c19.pdf

III.   CONCLUSION

For the reasons outlined above, the Government respectfully requests that the Court impose a sentence within the range as agreed upon in the parties' plea agreement, 6 to 12 months of imprisonment.

Respectfully submitted,

LEONARD C. BOYLE
ACTING UNITED STATES ATTORNEY

/s/ Brendan J. Keefe
Brendan J. Keefe
ASSISTANT U.S. ATTORNEY
United States Attorney's Office
157 Church Street, 25th Floor
New Haven, CT, 06510
Brendan.keefe@usdoj.gov
203-821-3710
Federal Bar No. ct28689

CERTIFICATION

I hereby certify that on July 27, 2021, the foregoing Notice was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.


/s/ Brendan Keefe
BRENDAN KEEFE
ASSISTANT UNITED STATES ATTORNEY